**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Jason James Vogt, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 3:16-cv-65 |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Chad Pringle, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

      Jason James Vogt (Vogt) petitioned for habeas relief under 28 U.S.C. § 2254. (Doc. #2). After preliminary review, the court ordered service on the respondent. (Doc. #4). The respondent moved to dismiss the habeas petition, (Doc. #7), and Vogt has responded to that motion, (Doc. #18).

### Summary of Report and Recommendation

      Vogt pleaded guilty to one count of gross sexual imposition involving two victims. Vogt's petition alleges his trial counsel was ineffective in various ways. He also alleges prosecutorial misconduct, that he did not knowingly and intelligently plead guilty, and that he was constructively denied effective assistance of counsel.

      Vogt is not entitled to habeas relief on his ineffective assistance of counsel claims or on his prosecutorial misconduct claim, since the state court decisions on those issues were not unreasonable or contrary to federal law. Vogt's claims alleging that he did not knowingly and intelligently plead guilty and that he was constructively denied effective assistance of counsel are without merit. Since he has not demonstrated entitlement to relief on any of his claims, Vogt's federal habeas petition should be dismissed.

## Background

An Information charged Vogt with two counts of gross sexual imposition. (Resp. Ex. #2, p. 1). Count 1 alleged that Vogt had engaged in a sexual act with a victim—K.D.—who was under the age of fifteen at the time of the act, and Count 2 alleged that Vogt had engaged in a sexual act with a second victim—S.C.—who was also under the age of fifteen at the time of the act. Id. An Incident Report attached to an Affidavit of Probable Cause in support of the Information stated that Vogt admitted that he had engaged in sexual acts with both victims. Id. at 2-3.

On June 30, 2014, Vogt appeared in state court for a change of plea hearing. (Resp. Ex. #4). During that hearing, the prosecutor moved to file an Amended Information which alleged—in one count—that Vogt had engaged in sexual acts with both victims. Id. at 2. The court granted that motion. Id. at 3-4.

At that change of plea hearing, the prosecutor, at the court's direction, advised Vogt of the charge and of the maximum penalties for that charge. Id. Vogt pleaded guilty to the one count of gross sexual imposition involving both victims. The state court determined that Vogt's guilty plea was freely and voluntarily made, and that it was supported by sufficient facts. Id. at 4-5. The court then ordered a presentence investigation and risk assessment. Id. at 5. Some of Vogt's current habeas claims relate to not being advised that the existence of two victims would increase his risk assessment score in the presentence investigation.

Following the presentence investigation, the court sentenced Vogt to twenty years of imprisonment with eight years suspended and five years of probation. (Resp. Ex. #6, p. 13). Vogt did not file a direct appeal.

On April 17, 2015, Vogt filed a state application for post-conviction relief. (Resp. Ex. #8). In that application, Vogt generally alleged that his counsel—Mark Beauchene (Beauchene)—failed to represent him with "[t]horoughness, legal knowledge, preparation (competence), diligence[,] and with proper communication" as required by the North Dakota Rules of Professional Conduct. Id. at 12. He specifically alleged that Beauchene was ineffective by (1) failing to hire an expert, to investigate, or to file a motion for a hearing to determine whether the victims[1] were "susceptible to influence through coercive, suggestive, or benign questioning," and whether the victims were "competent to testify from personal knowledge"; (2) failing to hire an expert or to investigate whether the victim or her mother[2] had previously "made false allegations of sexual abuse or . . . false reports to law enforcement," whether either "had a character of untruthfulness or dishonesty," or whether the victim's statements were the result of "projection" or "displacement"; (3) failing to provide him with "sufficient information" which would have enabled him "to make an intelligent decision"; (4) failing to "obtain legally relevant facts," "pursue obvious leads," "interview key state witnesses," or "properly review" discovery; and (5) failing to interview eight potential defense witnesses. Id. at 8-14. Vogt further alleged that he was constructively denied effective assistance of counsel, that he "did not enter his plea knowingly or intelligently," that the prosecutor erred in charging him, and that the prosecutor "used improper methods to produce a wrongful plea of guilty." Id. at 15-16, 18-19.

_____

[1] Though Vogt referred to only one victim in his post-conviction relief application, the charge to which he pled guilty involved two victims.

[2] As discussed below, the victim to which Vogt refers is K.D.

On August 18, 2015,[3] Vogt filed an affidavit in support of his state post-conviction relief application. (Resp. Ex. #9). In addition to the claims of ineffective assistance of counsel raised in his post-conviction relief application, Vogt's affidavit stated that counsel was ineffective by (1) failing to investigate or hire an expert to review "tactics" used by law enforcement "to get a false and coerced 'so called' confession from [Vogt], along with letter(s) of apology to the alleged victim(s)"; and (2) failing to develop a trial strategy. Id.

On August 24, 2015, the state court held an evidentiary hearing on Vogt's post-conviction relief application. (Resp. Ex. #11). Attorney David Ogren (Ogren) represented Vogt at that hearing. Id. Beauchene testified, along with five other witnesses. Id.

Beauchene testified that he did not recall how many times he met with Vogt. Id. at 6. He testified he had reviewed the discovery materials, including listening to a non-custodial recorded law enforcement interview of Vogt "many times." Id. at 7. Beauchene testified that during the interview Vogt, "with some specificity, admit[ted] the allegations." Id. Beauchene testified he also read Vogt's "short letter[s] of apology to each victim." Id. Beauchene testified that "it didn't seem like law enforcement pressured" Vogt during the interview, and instead they "treat[ed] him somewhat gingerly." Id. at 8. Beauchene testified that he provided the discovery materials to Vogt for his review. Id. at 24-26.

Beauchene testified that he and Vogt discussed Vogt's options of going to trial or engaging in plea negotiations, that Vogt had "[i]nitially" wanted him to "negotiate the

_____

[3] See Vogt v. North Dakota, Cass County Case No. 09-2015-CV-00957, Doc. ID# 32 (providing the date the affidavit was filed in the state court docket).

4

case," that he had not pressured Vogt, and that a plea hearing was scheduled pursuant to Vogt's "authorization." Id. at 10. He testified that Vogt later became "reluctant" or had a "change of heart," so at the plea hearing Beauchene, "in protecting [Vogt's] rights," asked the court not to proceed with the plea hearing and to instead set the case for a dispositional conference.[4] Id. at 10-12. The plea hearing did not proceed that day. A dispositional conference was held, and tt was not until more than three months after the dispositional conference that Vogt entered a guilty plea.

Beauchene testified that he and Vogt discussed potential witnesses, and discussed issues with S.C. and K.D.'s credibility—including that K.D. had accused her father of sexual misconduct, and that K.D. and S.C. frequented Vogt's home until the time of Vogt's arrest. Id. at 13-15, 18. He testified that he "check[ed] into" K.D.'s allegation against her father, and he "believe[d] that if there was a charge, it was either dismissed or not pursued." Id. at 14. He testified he did not recall another potential credibility issue—that S.C. had claimed K.D. was present when Vogt engaged in a sexual act with her, though K.D. did not admit to witnessing that sexual act. Id. at 18-19. Beauchene testified that, had Vogt chosen to proceed to trial, those issues would have impacted the victims' credibility. Id. at 14-15, 18-19. Beauchene testified he had not hired an investigator to investigate witnesses' credibility, because Vogt had decided to change his plea. Id. at 19.

---

[4] The state court set a change of plea hearing for February 24, 2014. See Vogt v. North Dakota, Cass County Case No. 09-2015-CV-00957, Doc ID# 14. The state court docket reveals that the court held a hearing that day and that the parties were present. On February 25, 2014, the state court set a dispositional conference for March 12, 2014. Id. at Doc ID# 15. The state court docket reveals that the court held a hearing that day and that the parties were present. Vogt did not enter a guilty plea until June 30, 2014.

Beauchene testified that during plea negotiations, "it was abundantly clear that there would not be a meeting of the minds" or a "joint recommendation" for disposition of the case. <u>Id.</u> at 20. He testified that he discussed with Vogt the sentence the prosecutor would recommend to the court and the positives and negatives of Vogt's case, and that it was Vogt's decision to plead guilty. <u>Id.</u> at 21-24. Beauchene testified that, as part of the plea agreement, the prosecutor agreed to charge Vogt with one class A felony involving two victims rather than with two class AA felonies each involving one victim, which Beauchene "thought was a fair concession on the State's part." <u>Id.</u> at 27. A class AA felony carries a maximum sentence of life imprisonment without parole, while a class A felony carries a maximum sentence of twenty years. Beauchene also testified that, if Vogt had chosen to go to trial, it was very likely the court would have granted a continuance to allow additional preparation. Beauchene further testified he did not consider that existence of two victims would increase Vogt's presentence investigation risk assessment score. <u>Id.</u> at 27, 32, 35.

Vogt's wife testified that she went to all but one of Vogt's meetings with Beauchene, and that there were a total of three one hour long meetings. <u>Id.</u> at 36. She testified she had discussed the victims' credibility issues with Beauchene. She testified she had identified numerous potential witnesses—others who were at their home during the relevant time period, and neighbors—but that Beauchene stated "it didn't really matter" since Vogt "had already confessed to doing it" and had written apology letters. <u>Id.</u> at 37-39, 44. She testified that Vogt had decided to plead guilty three days before trial, and at that time Beauchene had done no trial preparation. <u>Id.</u> at 39-40. She testified that Beauchene did not return phone calls and did not explain the plea

agreement process, that she did not understand Vogt was charged with one count which involved two victims, and that Beauchene stated that if Vogt went to trial "he would go to prison for the rest of his life." Id. at 40-41.

Vogt's daughter testified she was present when both K.D. and S.C. were at Vogt's home, she had not witnessed any sexual contact between her father and the victims, the victims were not reluctant to be around her father, and she was shocked when the victims made the allegations. Id. at 53, 55. She also testified that her parents had talked to her about testifying, but Beauchene had never spoken with her about that. Id. at 55.

K.D.'s mother, B.D., testified that she had "problems" with K.D. involving stealing, lying, and fighting in school. Id. at 61. She testified that K.D. frequently wanted to go the Vogt home. Id. at 61-62. She testified that K.D. had accused two other people of having abused her—K.D. accused her father of sexually abusing her a week before she accused Vogt of having had sexual contact with her, and she accused her cousin[5] of sexually abusing her one month later. Id. at 62. B.D. further testified she did not "find her [daughter] very credible," but she believed something had happened to her, although she was not sure who may have abused her, "because you can't be this messed up without something going on." Id. at 64-65. B.D. testified Beauchene never contacted her about testifying, but the Vogts and the prosecutor had contacted her. Id. at 66. B.D. further testified that, while she was aware of an apology letter that Vogt had written to K.D., she did not know that he had admitted during a recorded interview to having had sexual contact with K.D. Id. at 64.

_____

[5] B.D. testified that K.D. had told her cousin, prior to accusing that cousin of sexual abuse and prior to publicly accusing Vogt of sexual abuse, that Vogt had engaged in sexual contact with her. (Resp. Ex. #11, pp. 62-63).

R.D., who is K.D.'s father and B.D.'s husband, testified that K.D. had alleged that he had sexual contact with her on multiple occasions, that law enforcement investigated him and decided not to pursue charges, and that during law enforcement's questioning of him he learned his daughter had also made allegations against Vogt. Id. at 70-72. He testified that his daughter later made allegations involving sexual contact with a cousin. Id. at 71. R.D. testified that K.D. was not credible, that the Vogts contacted him about being a witness and told him they would inform Beauchene of his availability as a witness, but Beauchene never contacted him. Id. at 73. R.D. testified that K.D. frequented the Vogt home, she never indicated that she did not want to be around Vogt, and he had known Vogt for a long time and did not believe that he had any sexual contact with the victims. Id. at 74, 76. R.D. also testified he did not know that Vogt had admitted during a recorded interview to having had sexual contact with K.D., but that knowledge did not change his belief that Vogt would not have done so. Id. at 75-76.

Fargo Police Department Detective Nick Kjonaas testified that, after the victims disclosed that Vogt had abused them, he interviewed Vogt in Vogt's home. Id. at 78. He testified he did not coerce Vogt into confessing or writing the apology letters, and that Vogt's admissions were consistent with the victims' reports. Id. at 79-80.

At the conclusion of the evidentiary hearing, the court stated:

> THE COURT: . . . He made as one of his claims was for prosecutorial misconduct. I have heard no evidence, Basically, that's not being pursued?
>
> MR. OGREN: No.
>
> THE COURT: And given the lack of evidence in that and the immense amount of prosecutorial immunity that's out there, of course, I'm going to deny post-conviction relief based on prosecutorial misconduct.

Also, there was some discussion, but I think it was more a point of argument about having greater protection under the North Dakota Constitution than under the United States Constitution. It was more of a legal argument, and we'll take that into consideration.

Mr. Vogt claims ineffective assistance of counsel due to not hiring an expert. Basically, that the memory of the victims may have been improperly influenced by perhaps repeated and aggressive questioning by authority figures. We didn't have any evidence on how the victims were questioned.

Second point was that there should have been a hearing to question the interviewing techniques. Third, he should have been provided with discovery information. Counsel testified that he did provide the discovery information that was requested.

Also, that the allegation is that the defense counsel failed to exercise reasonable skills by advising petitioner to plead guilty without doing any relevant research and didn't prepare competently and didn't interview or depose witnesses.

We are, in fact, guided by the Strickland test, and it's up to this Court to determine whether the representation was defective or deficient. Did that representation fall below the objective standard of reasonableness. And it did not. Petitioner has not proven that happened. With that, I don't have to get to the second prong. But if he did prove that, this Court would find that strategy is not necessarily deficient performance and that there was no showing that there would have been a prejudice by going forward with the trial. As [the prosecutor] stated, there has been no showing that a trial would have come out with a different result faced with the admissions of Mr. Vogt in this case.

So accordingly, I'm going to deny the application for post-conviction relief.

Id. at 101-03.

The court filed its written order denying Vogt post-conviction relief, finding that

(1) Vogt "presented no evidence of prosecutorial misconduct"; (2) he "failed to present

evidence showing that his former attorney was ineffective for not hiring an expert or for

not requesting a hearing to question the techniques of the Investigator"; (3) he "failed to

show that his former attorney was ineffective in failing to research and prepare the case,

including interviewing and deposing witnesses"; (4) and his "former attorney's recommendation to plead guilty to the amended charge was a strategic decision made in light of the circumstances, including [Vogt's] detailed admissions." (Resp. Ex. #12).

Vogt appealed the state district court order denying post-conviction relief. In his appellant brief, submitted by his court-appointed counsel, Vogt claimed that his trial counsel was ineffective by failing to investigate the credibility of the victims, and by failing to advise him of the effect that pleading guilty to one count involving two victims would have on his risk assessment score. (Resp. Ex. #14, p. 5). Vogt also submitted a pro se supplemental brief, in which he raised the same claims as in his post-conviction relief application and in his affidavit in support of that application. (See Resp. Ex. #15).

The North Dakota Supreme Court, in summarily affirming the district court's order, described Vogt's claims as alleging that:

> the district court erred because his attorney's conduct fell below an objective standard of reasonableness and he was prejudiced, among other things, by his trial counsel's failure to (1) investigate the credibility of the two victims; and (2) advise him of the effect two victims would have on his risk assessment.

Vogt v. State, 2016 ND 48, 876 N.W.2d 485 (unpublished table decision).

## Allegations of the Federal Habeas Petition

In his habeas petition, Vogt raises four grounds for relief. First, he raises the same ineffective assistance of counsel claims which were raised in his state post-conviction relief application, the affidavit in support of that application, and at the evidentiary hearing on that application. He generally alleges that Beauchene failed to represent him in the manner required by the North Dakota Rules of Professional Conduct. (Doc. #2, p. 7). Specifically, he alleges that Beauchene was ineffective by (1)

failing to investigate, hire an expert, or to file a motion for a hearing to determine whether the victims were "susceptible to influence through coercive, suggestive, or benign questioning," and whether the victims were "competent to testify from personal knowledge because of th[at] influence"; (2) failing to hire an expert "to issue an expert opinion as to whether" K.D. or her mother had previously "made false reports to law enforcement concerning sexual abuse by another person," whether either "had a character of untruthfulness or dishonesty," or whether the victims' statements were the result of "projection"[6] or "displacement"; (3) failing to provide him with information which would have enabled him "to participate intelligently"; (4) failing to investigate "relevant and known facts," including the victims' credibility, to "develop a trial strategy"; (5) failing to depose or interview defense witnesses; and (6) failing to inform him of "the effect [of] multiple victims." Id. at 7-8. Second, he contends that he was constructively denied effective assistance of counsel. Id. at 8-9. Third, he alleges that he did not plead guilty "knowingly or intelligently." Id. at 9. Lastly, he contends that the prosecutor erred in charging him and "used improper methods to induce" his guilty plea. Id. at 9-10.

In his response to respondent's motion to dismiss, Vogt contends that the apology letters he wrote to the victims were "coerced" by law enforcement; he alleges

---

[6] In his habeas petition, Vogt described the claims he raised before the state courts during post-conviction proceedings. (Doc. #2, pp. 2-4). In describing his projection claim raised during those proceedings, he stated that "the mother of the alleged victim was in-fact sexually abused in the past and projected the alleged sexual abuse upon her daughter." Id. at 3. (See also Resp. Ex. #8, p. 10) (Vogt's state post-conviction relief application describing his projection claim); (Resp. Ex. #15, p. 11) (Vogt's pro se supplemental appellate brief describing his projection claim).

that Beauchene therefore should have investigated and conducted relevant research regarding those letters. (Doc. #18, pp. 9-11).

**Law and Discussion**

The court first considers respondent's claims of procedural defects in Vogt's petition.

## 1.    Procedural Default

Before seeking federal habeas relief, a petitioner must "fairly present" his federal habeas claim to the state courts. <u>Turnage v. Fabian</u>, 606 F.3d 933, 936 (8th Cir. 2010). "To 'fairly present' his claim, the petitioner must [have] present[ed] the same facts and legal theories to the state court that he later presented to the federal courts." <u>Jones v. Jerrison</u>, 20 F.3d 849, 854 (8th Cir. 1994). The claim need not be an "exact duplicate," <u>Odem v. Hopkins</u>, 192 F.3d 772, 776 (8th Cir. 1999), but "the federal claim should not present significant additional facts such that the claim was not fairly presented to the state court," <u>Kenley v. Armontrout</u>, 937 F.2d 1298, 1302 (8th Cir. 1991). There must be "at least an arguable factual commonality." <u>Id.</u> at 1303 (citations and internal quotation marks omitted).

Respondent contends that several of Vogt's ineffective assistance of counsel claims were "abandoned" because he did not raise those claims during the state district court's evidentiary hearing. (Doc. #11, pp. 6-8). Respondent notes that the North Dakota Supreme Court framed Vogt's claims as only those raised by Vogt's counsel's appellate brief. <u>Id.</u> at 9. Further, respondent asserts that Vogt can no longer present any "abandoned" claims to the state courts, since those claims are barred—or procedurally

12

defaulted—from state court review for misuse of process.[7] Id. at 10. Respondent contends that, because of that alleged procedural default, this court is prohibited from reviewing several of Vogt's ineffective assistance of counsel claims.[8] Id.

In this court's view, Vogt's post conviction relief application, affidavit in support of that application, and pro se supplemental appellate brief raised all of the ineffective assistance of counsel claims that respondent contends were "abandoned." Vogt does not allege additional facts or legal theories in his federal habeas petition that were not raised before the state courts. Therefore, this court concludes that the claims were fairly presented to the state courts, are not procedurally defaulted, and are not barred from federal review on that basis.[9] Although the North Dakota Supreme Court did not address

---

[7] Under North Dakota Century Code section 29-32.1-12, misuse of process is an affirmative defense that can be raised in state post-conviction proceedings. Misuse of process is defined to include any "claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to judgment of conviction and sentence or in a previous postconviction proceeding." This procedural defense is regularly enforced by the North Dakota courts. See State v. Steen, 2007 ND 123, ¶ 17, 736 N.W.2d 457, 462; Laib v. State, 2005 ND 187, ¶ 6, 705 N.W.2d 845, 848; Johnson v. State, 2004 ND 130, ¶ 13, 681 N.W.2d 769, 775-76.

[8] A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." Gray v. Netherland, 518 U.S. 152, 162 (1996).

[9] Though Vogt did not artfully plead his ineffective assistance of counsel claims before the state courts and his counsel did not argue all of those claims at the evidentiary hearing, this court has reviewed all of Vogt's state court briefs, and confirmed that all of his current ineffective assistance of counsel claims were raised before the North Dakota Supreme Court. (See Resp. Ex. 15). There are no additional facts or legal theories before this court that were not before the North Dakota Supreme Court. Alternatively, in the interest of judicial economy, the court could reach the merits of Vogt's claims without resolving the procedural bar issues. See Barrett v. Acevido, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.").

all of Vogt's ineffective assistance of counsel claims in its summary decision, the federal court must "look through" that unexplained order to the lower court's rationale for denying those claims. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

## 2.    Mixed Petition

Respondent contends that Vogt's petition is subject to dismissal as a "mixed petition" pursuant to Rose v. Lundy, 455 U.S. 509 (1982). (Doc. #11, p. 20). It is well established that the exhaustion doctrine, as codified by § 2254(b)(1)(A), prohibits this court from considering a "mixed petition"—that is, one that includes both exhausted and unexhausted claims. Rose, 455 U.S. at 518-19. However, Vogt's claims are all exhausted, since all of his claims were fairly presented to the state courts.[10] See Woodford v. Ngo, 548 U.S. 81, 92-93 (2006). Contrary to respondent's assertion, Vogt's habeas petition is therefore not subject to dismissal as a "mixed petition."

## 3.    Standard of Review of Claims Adjudicated on the Merits

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court cannot grant habeas relief on any claim adjudicated on the merits in state court proceedings, unless adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an

---

[10] Even if the court were to find that some of Vogt's claims are procedurally defaulted, it would not render his petition mixed. If state court remedies are no longer available because a petitioner failed to present his or her claims in accordance with state procedural requirements "those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." Woodford, 548 U.S. at 93 (citations omitted). Thus, even if some of Vogt's claims were found to be procedurally defaulted, they would be technically exhausted, so there would be no unexhausted claims.

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), "which demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam). A state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Under this standard, the federal court "must deny a writ—even if we disagree with the state court's decision—so long as that decision is reasonable in view of the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

## 4.     Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that his counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington,

466 U.S. 668, 687 (1984). In <u>Strickland</u>, the Supreme Court established a two-pronged test for analyzing ineffective assistance of counsel claims. First, a petitioner must show that his counsel's conduct was objectively unreasonable. Second, a petitioner must demonstrate that he was prejudiced by his counsel's performance. Under the prejudice prong, a petitioner must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." <u>Id.</u> at 694. In the context of guilty pleas, petitioner must prove that he would not have pleaded guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Both prongs of the <u>Strickland</u> test—error and prejudice—must be satisfied to prevail on an ineffective assistance of counsel claim.

In reviewing ineffective assistance of counsel claims, courts apply a strong presumption that counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690. A court reviewing counsel's performance must make every effort to eliminate hindsight and second-guessing. <u>Id.</u> at 689. Under the <u>Strickland</u> standard, counsel's strategic decisions regarding plausible options, made after thorough investigation of both law and facts, are virtually beyond challenge. <u>Id.</u> at 690. Additionally, each claim of ineffectiveness must be separately considered, since the "cumulative effect of alleged trial counsel errors is not grounds for granting habeas relief." <u>Middleton v. Roper</u>, 455 F.3d 838, 851 (8th Cir. 2006).

A "doubly deferential" standard of review applies to ineffective assistance of counsel claims in a § 2254 petition. <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, the court must take a "highly deferential look at counsel's performance

16

[under Strickland] through the deferential lens of § 2254(d)." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (internal citations and quotation marks omitted). So long as a state court's application of Strickland was reasonable, a petitioner cannot succeed on an ineffective assistance of counsel claim under § 2254(d)'s standard.

Applying these standards, the court next considers each of Vogt's ineffective assistance of counsel claims separately.

### A. Failure to Investigate, Hire an Expert, or File a Motion Regarding Victim Influence

Vogt contends that Beauchene should have investigated, hired an expert, or filed a motion for a hearing to determine whether the victims were "susceptible to influence through coercive, suggestive, or benign questioning," and whether the victims were "competent to testify from personal knowledge because of th[at] influence." (Doc. #2, p. 7). Vogt provides no facts to support his theory that either of the victims were influenced by the manner of their questioning, and so has not demonstrated how further investigation, hiring an expert, or requesting a hearing would have impacted his defense.

Mere speculation and conclusory allegations are not enough to establish the prejudice prong of Strickland. See Sargent v. Armontrout, 841 F.2d 220, 226 (8th Cir. 1998) ("[T]he burden is on the petitioner to prove that his rights have been violated. Speculation and conjecture will not satisfy this burden."); Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir. 1987) ("In order to warrant relief . . . a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim. Mere conclusory allegations will not suffice."). Because Vogt's allegations regarding others' influence on

the victims were speculative and conclusory, the state court's denial of Vogt's claim that counsel was ineffective by failing to investigate, hire an expert, or move for a hearing regarding victim influence was reasonable under § 2254(d).

### B. Failure to Hire an Expert Regarding Credibility Issues

Vogt contends that Beauchene should have hired an expert to determine whether K.D. or her mother had previously "made false reports to law enforcement concerning sexual abuse by another person,"[11] or whether either "had a character of untruthfulness or dishonesty." (Doc. #2, p. 7). Testimony at the evidentiary hearing established that K.D. had made sexual abuse allegations against her father, and had later made similar allegations against a cousin. Beauchene testified that he discussed with Vogt that K.D. had accused her father of sexual misconduct, and that K.D.'s credibility would have been an issue had Vogt chosen to go to trial.

It is unclear how Vogt would have benefitted had Beauchene hired an expert to determine whether K.D. or her mother had made false reports to law enforcement or were of dishonest character, since Beauchene and Vogt both knew that K.D. and her mother reported to law enforcement that K.D.'s father had sexually abused K.D., and that those charges were either dismissed or not pursued. Additionally, the prosecutor argued on appeal of the state district court's order denying post-conviction relief "that more efforts by Vogt's trial counsel to undermine the victims would have resulted in [a] refusal to give Vogt the benefit of his acceptance of responsibility[,] and [would have]

---

[11] Nothing in the record suggests any credibility issues concerning K.D.'s mother. The court infers that Vogt refers to K.D.'s mother's report to law enforcement that K.D. had told her about the sexual abuse allegations against K.D.'s father. (See Doc. #18-8).

exposed Vogt to . . . more potential incarceration." (Resp. Ex. #16, p. 10). In the absence of any supporting evidence that he would have benefitted from the retention of an expert, Vogt has not demonstrated that Beauchene's failure to retain an expert to consider credibility issues was objectively unreasonable or that it prejudiced him. The state court's denial of Vogt's claim that counsel was ineffective by failing to hire an expert regarding credibility issues was therefore reasonable under § 2254(d).

C.      **Failure to Hire an Expert Regarding Theories of Projection or Displacement**

Vogt contends that Beauchene should have hired an expert to determine whether the victims' statements were the result of "projection" or "displacement."[12] (Doc. #2, p. 7). Vogt presented no evidence before the state courts to support his theory that either of the victims' statements were the result of projection or displacement. Mere speculation is not enough to establish ineffective assistance of counsel. See Sargent, 841 F.2d at 226; Wiggins, 825 F.2d at 1238 (8th Cir. 1987). Additionally, Vogt overlooks facts which detract from this claim—he admitted to investigators that he engaged in the conduct, and he wrote apology letters to the victims.

In the absence of any supporting evidence, Vogt has not demonstrated that Beauchene's failure to retain an expert to consider projection or displacement theories was objectively unreasonable or that it prejudiced him. The state court's denial of Vogt's claim that counsel was ineffective by failing to hire an expert regarding those theories was therefore reasonable under § 2254(d).

---

[12] It is unclear whether Vogt alleges that only K.D.'s statements, or the statements of both victims, might have been the result of projection or displacement.

## D.     Failure to Provide Information

Vogt contends that Beauchene failed to "[c]omply with [his] request(s) for information," which would have enabled him "to participate intelligently." (Doc. #2, p. 7). In his habeas petition, Vogt does not describe what information Beauchene allegedly failed to provide. In his response to respondent's motion to dismiss, Vogt contends that he was not provided the discovery materials until after he was sentenced. (Doc. #18, p. 7). However, Beauchene testified that he reviewed the discovery materials, he provided those materials to Vogt for his review, and he discussed Vogt's options with him prior to Vogt's guilty plea. No one testified that Vogt had not received the discovery materials until after sentencing, as Vogt now contends. Furthermore, the state district court found that Beauchene had provided the discovery materials to Vogt prior to his change of plea. A state court's factual findings are presumptively correct, and Vogt has not rebutted that presumption. See Boss v. Ludwick, 760 F.3d 805, 810 (8th Cir. 2014). Since Vogt has not alleged sufficient facts to support his claim that Beauchene failed to comply with any requests for information, the state court's denial of Vogt's claim that counsel was ineffective by failing to provide information was reasonable under § 2254(d).

## E.     Failure to Investigate and Develop a Trial Strategy

Vogt contends that Beauchene failed "[t]o conduct any investigation regarding the victim[s'] credibility" and did not "develop a trial strategy after a proper investigation." (Doc. #2, pp. 7-8). Beauchene testified he had thoroughly reviewed the discovery materials and had discussed potential witnesses and victim credibility issues with Vogt—including that K.D. had accused her father of sexual misconduct, and that

20

K.D. and S.C. frequented Vogt's home prior to Vogt's arrest. Beauchene did not, however, recall another potential credibility issue—that S.C. had claimed K.D. was present when Vogt engaged in a sexual act with her, though K.D. did not admit to witnessing that sexual act. Beauchene testified that the victims' credibility would have been an issue had Vogt chosen to go to trial. He testified he had not hired an investigator because Vogt decided to change his plea, and that, had Vogt not decided to change his plea, the court very likely would have granted a continuance, which would have allowed him to further prepare for trial.

In his response to respondent's motion to dismiss, Vogt contends that had Beauchene investigated K.D.'s allegations against her father and her cousin, he would have discovered seven individuals who would have testified that Vogt was never alone with the victims, that they never saw Vogt do anything inappropriate to the victims, and that the victims were upset with Vogt because he had forbidden his daughter from associating with the victims. (Doc. #18, pp. 5-7); (see also Docs. #18-1 to #18-7). Vogt also contends that Beauchene should have investigated S.C.'s dance instructor's report that S.C. had fabricated stories in the past. (Doc. #18, p. 7); (see also Doc. #18-9). Vogt states that had counsel "investigated regarding this information and informed [him] of this information it would have made going to trial a lot more likely." (Doc. #18, p. 7).

Vogt admits K.D.'s allegation against her father and S.C.'s dance instructor's report were documented in the discovery materials. Id. Beauchene testified he had reviewed those materials, and that he had given those materials to Vogt. No one testified that Vogt had not timely received the discovery materials. The state court found that Beauchene had given those materials to Vogt for his review prior to his change of plea.

Although Vogt contends that Beauchene did not give him the discovery materials until after his sentencing, the state court's factual findings are presumptively correct, and Vogt has not rebutted that presumption. See Boss, 760 F.3d at 810.

Beauchene testified he had discussed potential witnesses and victim credibility issues with Vogt. Vogt's wife also testified that those issues had been discussed, and K.D.'s parents both testified that the Vogts had contacted them about testifying. While Vogt might not have had the information regarding K.D.'s later allegation against her cousin, Vogt had all of the other information he contends would have made him more likely to go to trial—K.D.'s sexual abuse allegation against her father and the dance instructor's report. Furthermore, to be entitled to habeas relief, Vogt would need to not only demonstrate that he would have been more likely to go to trial; rather, he would need to prove that he would not have pleaded guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Since Vogt has not demonstrated that Beauchene's investigation and strategy were objectively unreasonable or that it prejudiced him, the state court's denial of Vogt's claim that counsel was ineffective by failing to investigate and develop a trial strategy was reasonable under § 2254(d).

### F.     Failure to Interview or Depose Witnesses

Vogt contends that Beauchene failed to interview or depose defense witnesses. As noted above, Vogt identified seven individuals whom he contends would have testified that Vogt was never alone with the victims, that they never saw Vogt do anything inappropriate to the victims, and that the victims were upset with Vogt because he had forbidden his daughter from associating with the victims. (Doc. #18, pp. 5-7); (see also Docs. #18-1 to #18-7). Vogt contends that had the witnesses been interviewed or

deposed, "[i]t would have made going to trial likely and at least would have aided in further negotiations with the State and made a significant impact on the plea negotiations and what the State was willing to offer." (Doc. #18, p. 6).

Four of the seven witnesses testified at the evidentiary hearing—Vogt's wife, Vogt's daughter, and K.D.'s parents. K.D.'s parents' testimony raised credibility issues about K.D. However, K.D.'s credibility issues were known to Beauchene, Vogt, and the prosecutor. Additionally, in light of Vogt's recorded confession and written apology letters, Vogt's assertion that interviews or depositions would have impacted plea negotiations is speculative. As previously discussed, Vogt's burden is <u>not</u> to demonstrate that <u>he would have been more likely</u> to go to trial had counsel done what he claims should have been done; rather, he must prove that he <u>would have done so</u> absent his counsel's ineffectiveness. He has not met that burden. Since Vogt has not demonstrated that Beauchene's failure to interview or depose witnesses was unreasonable or prejudiced him, the state court's denial of that claim was reasonable under § 2254(d).

### G.    Failing to Advise of the Effect of Multiple Victims

Before addressing Vogt's claim that Beauchene failed to advise him of the effect that existence of multiple victims might have on his sentencing, the court addresses respondent's assertion that Vogt failed to raise this claim in his habeas petition. (<u>See</u> Doc. #11, p. 9). While Vogt's claim is not artfully pled, it is clear he intended to raise the same claim as he did in the state court proceedings. In his habeas petition, Vogt wrote that counsel failed to "[i]nform [him] regarding the effect [of] multiple victims

credibility."[13] (Doc. #2). In his response to respondent's motion to dismiss, Vogt clarified his claim, "Counsel failed to inform or advise [him] regarding the effect multiple victims would have on the risk assessment and subsequent parole and release considerations." (Doc. #18, p. 8). Because he sufficiently raises that claim, this court considers the claim to concern the existence of multiple victims.

Beauchene testified that, while he did not consider that existence of two victims would increase Vogt's presentence investigation risk assessment score, he thought that the prosecutor's agreement to charge Vogt with one class A felony involving two victims, rather than with two class AA felonies each involving one victim, was fair given the circumstances of the case, and in light of the substantially lesser maximum penalty. The state district court determined that Beauchene's recommendation to plead guilty to the amended charge "was a strategic decision made in light of the circumstances, including [Vogt's] detailed admissions." (Resp. Ex. #12, p. 2).

The prosecutor originally charged Vogt with two counts of gross sexual imposition in violation of North Dakota Century Code sections 12.1-20-03(1)(d) and 12.1-20-03(3)(a)—both class AA felonies. (Resp. Ex. #2). The maximum term of imprisonment for a class AA felony is life imprisonment without parole. N.D. Cent. Code § 12.1-32-01(1). Pursuant to the plea agreement, the prosecutor charged Vogt with one count of gross sexual imposition in violation of North Dakota Century Code sections

---

[13] In his habeas petition, Vogt states his claim regarding victim credibility in the sentence immediately preceding that in which he states his claim regarding the effect of multiple victims. (See Doc. #2, p. 8). It is unlikely that he would have raised his victim credibility claim as two separate grounds. It appears his use of the word "credibility" in his claim regarding the effect of multiple victims was an error.

12.1-20-03(2)(a) and 12.1-20-03(3)(b)—a single class A felony. The maximum term of imprisonment for a class A felony is twenty years. Id. § 12.1-32-01(2). In other words, the prosecution agreed to charge only one count which carried a twenty year maximum sentence, rather than two counts, each of which carried a maximum sentence of life without parole.

At his change of plea hearing, the prosecutor, at the court's direction, advised Vogt of the potential maximum sentence on the single class A felony. While Beauchene failed to advise Vogt of the effect two victims might have on his presentence investigation risk assessment score, Vogt knew the potential maximum sentence he faced prior to pleading guilty. Vogt has not alleged any facts demonstrating that he pleaded guilty with any expectation that his risk assessment score would be lower because of the amended charge. In fact, Vogt's claim regarding the risk assessment score was first raised at his evidentiary hearing by his post-conviction relief counsel. Since Vogt knew the potential sentence he faced and had no expectation that his risk assessment score would be lower if he pleaded guilty to the amended charge, he cannot demonstrate that he would not have pleaded guilty and insisted on going to trial if Beauchene had advised him of the effect existence of two victims might have on his risk assessment score. Since Vogt cannot establish that he was prejudiced by Beauchene's failure to advise him of that matter, the state court's denial of that ineffective assistance of counsel claim was reasonable under § 2254(d).

### H. Failure to Investigate and Conduct Research Regarding Vogt's Letters of Apology to the Victims

Vogt raised his claim regarding the apology letters in response to respondent's motion to dismiss. His apology letter to K.D. states, "I am very sorry for

[i]nappropriately touching you, I hope you can forgive me some day." (Doc. #18-11). His apology letter to S.C. states, "I am truly sorry for the [i]nappropriate way I touched you, and I swear on my life it will never happen again." (Doc. #18-10).

Vogt contends he was questioned by law enforcement "for hours" after working all day, that law enforcement told him they would leave if he wrote the letters, that law enforcement led him to believe he was entering a plea agreement by writing the letters, that he wrote the words law enforcement told him to use, and that the letters "say nothing about sexually abusing, sexually touching, or . . . anything concerning a sexual encounter at all." (Doc. #18, pp. 9-10). He contends that without the apology letters, "there is no credible independent evidence or corroborated admissions to bolster the so-called confession." Id. at 10. He also contends the letters are not admissible evidence. Id. Lastly, he contends that had Beauchene investigated or conducted research "into the facts regarding the so-called confessions it would have made going to trial a lot more likely and would have aided in further negotiations with the state and would have made a significant impact on plea negotiations." Id. at 11.

Because he did not raise it until responding to the motion to dismiss, Vogt's claim regarding the apology letters could be denied for failure to comply with Rule 2(c) of the Rules Governing Section 2254 Cases, which requires, in part, that the habeas petition "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." But, even when considered on the merits, the claim fails.

Vogt overlooks that he not only wrote apology letters to the victims, but he also gave a detailed confession during a recorded interview. One was not required to corroborate the other, as Vogt seemingly argues. Additionally, in claiming the letters

were not admissible evidence, Vogt fails to appreciate that the letters and the recording were not admitted into evidence, since he pleaded guilty rather than going to trial.

Beauchene testified he reviewed the discovery materials, including the apology letters, and he listened to the recorded interview many times. Beauchene testified that "it didn't seem like law enforcement pressured" Vogt during the interview, and instead they "treat[ed] him somewhat gingerly." (Resp. Ex. #11, p. 8). To the extent Vogt's claim can be construed as asserting that Beauchene should have filed a motion to suppress the letters and/or the recorded interview, Vogt has not established that such a motion would have had merit. See Dyer v. United States, 23 F.3d 1424, 1425 (8th Cir. 1994) (failure to file a meritless motion does not establish ineffective assistance of counsel). Since Vogt has not demonstrated Beauchene's investigation and research regarding the apology letters and/or recorded interview were objectively unreasonable or that it prejudiced Vogt, the state court's denial of Vogt's claim that counsel was ineffective by failing to investigate, research, and prepare the case was reasonable under § 2254(d).

5. **Constructive Denial of Assistance of Counsel under United States v. Cronic**

In his habeas petition, Vogt contends that "it was as if [he] had no counsel," so "prejudice should be presumed." (Doc. #2, p. 8). He further contends that "the adversarial process itself [was] presumptively unreliable," because he was denied effective assistance of counsel. Id. at 9. In his response to respondent's motion to dismiss, citing United States v. Cronic, 466 U.S. 648 (1984), Vogt asserts that "the process lost its character as a confrontation between adversaries." (Doc. #18, p. 2).

Vogt raised this constructive denial of counsel claim under <u>Cronic</u> before the state courts, (<u>see</u> Resp. Ex. #8, p. 15; Resp. Ex. #15, pp. 13, 15-16), though it appears neither the state district court nor the state supreme court considered <u>Cronic</u> it its analysis of Vogt's ineffective assistance of counsel claims. When a claim raised in the state courts is not addressed by the state courts, AEDPA's deferential standard of review does not apply. <u>Clemons v. Luebbers</u>, 381 F.3d 744, 756 n.8 (8th Cir. 2004) (citing <u>Taylor v. Bowersox</u>, 329 F.3d 963, 967-68) (8th Cir. 2003)). Even though AEDPA's deferential standard of review does not apply to Vogt's <u>Cronic</u> claim, that claim fails.[14]

In <u>Cronic</u>, the United States Supreme Court held that the court may presume the defendant was prejudiced if counsel was "totally absent, or prevented from assisting the accused during a critical stage of the proceedings," where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or "when counsel is available to assist the accused during trial, [but] the likelihood that any lawyer, even a competent one, could provide assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." 466 U.S. at 659-60 (citations omitted). Vogt's counsel was not absent or prevented from assisting him, and this is not a case in which circumstances would have rendered any competent attorney unable to assist him. Additionally, Vogt has not demonstrated that counsel failed to subject the prosecution's case to meaningful adversarial testing. To find otherwise, the court would have to ignore the favorable plea agreement counsel secured for Vogt.

---

[14] The court need not determine whether Vogt's <u>Cronic</u> claim should be considered under AEDPA or pre-AEDPA standards, since the claim fails under either standard.

Cronic is therefore inapplicable and Vogt has not demonstrated that he is entitled to a presumption of prejudice.

## 6.     Absence of a Knowing and Intelligent Guilty Plea

Vogt asserts that his guilty plea was not knowingly or intelligently made, since he received ineffective assistance of counsel prior to that plea.[15] (Doc. #2, p. 9; Doc. #18, p. 6). Vogt raised that claim before the state courts. (See Resp. Ex. #8, p. 16; Resp. Ex. #15, p. 17). But since neither the state district court nor the state supreme court considered Vogt's claim, AEDPA's deferential standard of review does not apply to that claim. See Clemons, 381 F.3d at n.8 (citing Taylor, 329 F.3d at 967-68).

The only argument Vogt raises in support of this claim is that he received ineffective assistance of counsel. As discussed above, Vogt has not demonstrated that counsel was ineffective or that he was constructively denied counsel. Additionally, during Vogt's change of plea hearing, the prosecutor explained the difference between the original charge and the amended charge, the prosecutor (at the court's direction) advised Vogt of the maximum penalties for the amended charge, Vogt stated that he

---

[15] Respondent construes Vogt's claim as alleging that counsel failed to file a motion to withdraw Vogt's guilty plea. (Doc. #11, p. 17). But, Vogt no where asserts that claim. Vogt states that had he not received ineffective assistance of counsel, he would not have "plead-out," and that therefore, his "plea of guilty should not stand." (Doc. #2, pp. 8-9). He also states, "Petitioner did not enter his plea-of-guilty knowingly or intelligently." Id. Furthermore, Vogt states that he asked a "Jailhouse Lawyer" to file a motion to withdraw his guilty plea, not his trial counsel, but that the "Jailhouse Lawyer" instead filed a motion to vacate his sentence. (Doc. #18, p. 3); (see also Resp Ex. #18) (motion to vacate filed in state court). To the extent that Vogt alleges ineffective assistance of counsel based on Beauchene's failure to file a motion to withdraw Vogt's guilty plea, even if not procedurally defaulted, the claim would fail on the merits. Vogt has not established any grounds to withdraw his guilty plea. See Dyer, 23 F.3d at 1425 (failure to file a meritless motion does not establish ineffective assistance of counsel).

understood those potential penalties, and the court read the amended charge to Vogt.

(Resp. Ex. #4, pp. 2-3). After Vogt pleaded guilty, the court inquired of Vogt as follows:

> THE COURT:  All right. Now, do you understand that by pleading guilty you have given up certain rights, and that would include your right to a trial. Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Has anyone made any threats or any promises that would coerce you into pleading guilty?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Is this a voluntary guilty plea?
>
> THE DEFENDANT:  Yes.

Id. at 4-5. The court then determined that Vogt's guilty plea was freely and voluntarily made, and that it was supported by sufficient facts. Id. at 5. Vogt has not demonstrated his guilty plea was involuntary or not intelligently made.

**7.    Prosecutorial Misconduct**

Vogt contends that the prosecutor violated his due process rights by charging him with two class AA felonies based solely on the statements of the victims, whom he asserts were not credible. (Doc. #2, p. 9). Vogt also contends that the prosecutor "used improper methods to induce [him] to plead-out to a Class A Felony with two alleged victim(s)." Id. at 10.

Respondent asserts that Vogt's prosecutorial misconduct claim is procedurally defaulted. However, Vogt raised that claim before both the state district court and the state supreme court, (Resp. Ex. #8, pp. 18-19; Resp. Ex. #15, pp. 4-6), and the state district court explicitly denied that claim, (Resp. Ex. #11, p. 101; Resp. Ex #12, p. 1). Vogt's prosecutorial misconduct claim is therefore not procedurally defaulted.

Vogt's contention that the prosecutor charged him with two class AA felonies based solely on the victims' statements is untrue. The charges were also supported by Vogt's confession and apology letters. Additionally, since Vogt was alleged to have engaged in sexual acts with two victims, it was not improper for the prosecutor to either charge him with two crimes or with one crime involving two victims. The state court's denial of Vogt's prosecutorial misconduct claim was therefore reasonable under § 2254(d).

## Conclusion

None of Vogt's ineffective assistance of counsel claims entitle him to habeas relief. Nor does his claim alleging prosecutorial misconduct. The state court decisions regarding those claims were neither contrary to clearly established federal law nor an unreasonable application of federal law. Nor were those decisions unreasonable determinations of the facts in light of the evidence presented to the state court. Furthermore, Vogt's claims alleging that he was constructively denied effective assistance of counsel under Cronic and that he did not knowingly and intelligently plead guilty are without merit. It is therefore **RECOMMENDED** that respondent's motion to dismiss be **GRANTED** and that Vogt's habeas petition be **DISMISSED** with prejudice.

Based upon the entire record, the district judge should conclude that dismissal of the petition is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. It is therefore **RECOMMENDED** that a certificate of appealability not be issued by this court. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997) (finding that a district court possesses the authority to issue certificates of appealability under § 2253(c)). It is further **RECOMMENDED** that the

court find that any appeal would be frivolous, could not be taken in good faith, and may not be taken in forma pauperis.

Dated this 13th day of February, 2017.

/s/ *Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT

Pursuant to Federal Rule of Civil Procedure Rule 72(b) and District of North Dakota Local Civil Rule 72.1(D)(3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **February 27, 2017**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.